IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02052-PAB-CBS

MARTIN W. WILLIAMS,
    Plaintiff,
v.

KEVIN MILYARD, in his individual and official capacities,
JOHN CHAPDELAINE, in his individual and official capacities,
MAJOR LLOYD WAIDE, in his individual and official capacities,
J. WATTS, Case Manager III, in his individual and official capacities,
MR. SINNOTT, Case Manager, in his individual and official capacities,
MR. DEAL, Case Manager, in his individual and official capacities,
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendants' "Motion to Dismiss" (filed November 22, 2010) (Doc. # 19). Pursuant to the Order of Reference dated September 16, 2010 (Doc. # 6) and the memorandum dated November 23, 2010 (Doc. # 21), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Williams' Response (filed December 13, 2010) (Doc. # 24), the pleadings, the entire case file, the arguments presented at the hearing held on January 21, 2011, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Williams is currently incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC") in Sterling, Colorado. Proceeding *pro se*, Mr. Williams brought this civil action pursuant to Title 42 U.S.C. § 1983. (*See* Complaint (Doc. # 3) at p. 4 of 15). Mr. Williams alleges that on September 31 [sic], 2008 he was accused of sexual misconduct with his cell mate and charged and convicted with a Code of Penal Discipline ("COPD") violation for sexual abuse. (*See* Doc. # 3 at p. 4 of

19). Mr. Williams was sentenced to 20 days in punitive segregation and referred for an administrative segregation ("Ad Seg") hearing. (*See id.*). At the conclusion of the Ad Seg hearing, Mr. Williams was placed in Ad Seg for 4 months. (*See id.* at p. 5 of 15). Mr. Williams alleges that Defendants "subjected me to sex discrimination" in violation of the Colorado Department of Corrections' ("CDOC") Administrative Regulations ("ARs"), and violated his rights to equal protection and to be free from cruel and unusual punishment. (*See* Doc. # 3 at pp. 6-10 of 15). Mr. Williams also alleges deprivation of liberty and property in violation of his right to due process. (*See id.* at p. 11 of 15). As relief, Mr. Williams seeks compensatory and punitive damages and injunctive relief. (*See id.* at p. 15 of 15).

II.     Standard of Review

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter in the Complaint. Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. U.S. ex rel. U.S. Army Corps. of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." "[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

Because Mr. Williams appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by

federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Mr. Williams] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.   Liability of Defendants in their Official and Individual Capacities

Mr. Williams is suing the Defendants in both their individual and official capacities. (*See* Doc. # 3 at p. 1 of 15). To the extent that Mr. Williams is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the CDOC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).

Eleventh Amendment immunity provides protection for state governmental entities sued in federal court for damages unless the state waives its immunity. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). Further, states and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). To the extent that Mr. Williams seeks monetary damages from Defendants in their official capacities pursuant to § 1983, such claim is

properly dismissed with prejudice.

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Williams is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67. In addition to monetary damages, Mr. Williams seeks relief in the nature of injunctive relief "to amend and/or repudiate any claim of PREA violations. And I seek to be restored to my previous status and privileges as prior to my placement in AD SEG." (*See* Doc. # 3 at p. 15 of 15). Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. at 167 n. 14). The court proceeds to evaluate whether Mr. Williams has stated a plausible claim against Defendants in their individual capacities or in their official capacities for injunctive relief.

1.    Claim One for Sex Discrimination in Violation of Administrative Regulations

Mr. Williams does not deny the sexual conduct; rather, he disagrees that his conduct was a proper basis for his punishment. Mr. Williams argues that his COPD violation based on sexual conduct was treated more strictly than less serious violations, "in direct violation of the A.R. that pertains to non discrimination and the A.R. governing Prison Rape Elimination Procedures." (*See* Doc. # 3 at p. 7 of 15). Mr. Williams' allegations that

Defendants violated prison regulations fail to state a claim for relief. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation of a right secured by the Constitution or laws of the United States.) (citations omitted); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("failure to adhere to administrative regulations does not equate to a constitutional violation"). Mr. Williams' Claim One is properly dismissed.

2.  Claim Two for Violation of Equal Protection Rights

Mr. Williams alleges violation of his right to equal protection. (*See* Doc. # 3 at p. 8 of 15). The Equal Protection Clause prohibits discrimination by government which either "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). In order to state an equal protection claim, Mr. Matthews must allege that he was "similarly situated" to other inmates who were treated differently, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). *See also Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) ("In order to sufficiently state an Equal Protection claim, a prisoner must show: (1) that he is treated differently than a similarly situated class of inmates, (2) that the different treatment burdens one of his fundamental rights, and (3) that the different treatment bears no rational relation to any legitimate penal interest.") (internal quotation marks and citation omitted). Mr. Williams has not alleged facts sufficient to satisfy these elements.

Mr. Williams does not allege that he was deprived of a fundamental right and it is clear that inmates do not have a fundamental right to avoid placement in administrative segregation. Prisoners retain " 'only a narrow range of protected liberty interests.' " *Abbott*

*v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1982)).  The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  *See also Hewitt*, 459 U.S. at 468 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");  *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.");  *Penrod v. Zavaras*, 94 F.3d at 1406 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted).  Mr. Williams' allegation of a liberty interest does not amount to a fundamental right for equal protection purposes.

Nor does Mr. Williams allege that Defendants treated him differently because of any suspect classification of homosexuality.  The Tenth Circuit Court of Appeals "like many others, has previously rejected the notion that homosexuality is a suspect classification." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1114 n. 9 (10th Cir. 2008) (collecting cases).

Finally, Mr. Williams does not plausibly allege that Defendants intentionally treated him differently than others similarly situated.  Mr. Williams alleges that "every case of sexual abuse involving homosexuality at SCF is referred to and reclassed to AD SEG" that is, that everyone convicted of such a COPD violation is placed in Ad Seg. (*See* Doc. # 3 at p. 8 of 15;  *see also* audio recording of Mr. Williams' arguments made at the hearing held on January 21, 2011 (arguing that an "unwritten rule" that every instance of sexual abuse is referred to Ad Seg is applied "to everyone" at SCF and that SCF is the only facility that applies this unwritten rule)).  Thus, Mr. Willimas has alleged that at SCF, all such violations

7

are treated equally.  Mr. Williams alleges that "[t]his is not the case in other facilities . . . ." (*See id.*).  Mr. Williams has not identified any other specific facilities, any other specific inmates, how they were similarly situated, or what treatment they received with regard to any COPD conviction for sexual abuse.  Mr. Williams presents only conclusory allegations that he received different treatment than unspecified other inmates in unspecified other correctional facilities.  It is not plausible that "there are no relevant differences between [Mr. Williams] and other inmates that reasonably might account for their different treatment." *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir.1994) (prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.").  Prison officials may consider "whatever . . . seems relevant in making the qualitative judgment of how to classify an individual inmate," including Mr. Williams' conviction for sexual abuse.  *Fogle*, 435 F.3d at 1261.  "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).  *See also Abbott v. McCotter*, 13 F.3d 1439, 1441 (10th Cir.1994) (upholding dismissal of conclusory equal protection claim for frivolousness).  As Mr. Williams' allegations are entirely conclusory and fail to plausibly state an Equal Protection claim, Claim Two is properly dismissed.

3. Claim Three for Violation of Right to Be Free from Cruel and Unusual Punishment

In his third claim, Mr. Williams alleges violation of his Eighth Amendment rights based on his placement in administrative segregation. Mr. Williams alleges that he suffered loss of personal property, forfeiture of earned time, loss of other privileges "as the result of having been in AD SEG," a "pervasive and hostile attitude projected toward me by SCF staff," and four months of isolation, with no measure of treatment or therapy or any corrective action . . . ."  (*See* Doc. # 3 at pp. 9-10 of 15).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to the severity of the crime, or that they entail serious deprivation of basic human needs." *Georgacarakos v. Wiley*, 2010 WL 1291833 *11 (D. Colo. March 30, 2010) (internal quotation marks and citation omitted).[1]

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.' " *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective component follows from the principle that " 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The "deliberate indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501

---

[1]  Copies of unpublished cases are attached to this Recommendation.

U.S. at 303-04.  A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the objective component, Mr. Williams' allegations do not state a claim for deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief can be granted pursuant to the Eighth Amendment.  The conditions which Mr. Williams generally alleges do not rise to the serious level implicating a violation of his Eighth Amendment rights. *See Estate of DiMarco*, 473 F.3d at 1337-38 (conditions of confinement in most restrictive housing pod "met the basic necessities of life");  *Trujillo v. Williams*, 465 F.3d 1210, 1225 n. 17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not state an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998));  *Smith v. Romer*, 1997 WL 57093 at *2 (10th Cir. 1997) (unpublished) (allegations of twenty-three hours per day of confinement, meals in cells, limited vocational, educational and recreational services offered through television, and light always on failed to state an Eighth Amendment claim).

As to the subjective component, Mr. Williams has not alleged that Defendants placed him in Ad Seg with deliberate indifference to a risk of harm.  *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Mr. Williams' allegations do not state a claim of "subjective recklessness" of Defendants.  *Farmer*, 511 U.S. at 839-40.

Further, Mr. Williams' allegations are too vague and conclusory to state a claim upon which relief can be granted. Other than general conclusory allegations of lost property and

privileges and "a pervasive and hostile attitude toward me by SCF staff" (*see* Doc. # 3 at p. 9 of 15), Mr. Williams has not sufficiently alleged specific conditions or conduct by the named Defendants. As Mr. Williams' allegations are not adequate to state an Eighth Amendment violation, Claim Three is properly dismissed.

4.    Claim Four for Violation of Right to Due Process

Mr. Williams alleges violation of his right to due process based on several grounds. Mr. Williams alleges violation of his right to due process in the administrative segregation hearing that resulted in his placement in Ad Seg for four months: (1) "when they referred me to an ad seg hearing as a threat and a danger with no regard for my demeanor and without consideration of my relatively good COPD history;" (2) "When they held a hearing to determine AD SEG status when the hearing officer did not have the authority to exercise his individual [judgment] and authority to do anything other than send me to AD SEG;" (3) "When they ruled on my appeal without the authority to exercise individual [judgment] and authority to grant said appeal;" and (4) "When they conducted status reviews without the authority to release me and without giving my any chance to participate or contest any of the evidence of findings of said reviews." (*See* Doc. # 3 at p. 11 of 15). Mr. Williams also alleges violation of his right to due process based on the same facts as his Eighth Amendment claim and based on the deprivation of unspecified personal property. (*See* Response (Doc. # 24) at p. 4 of 7; audio recording of Mr. Williams' arguments at the hearing held on January 21, 2011).

The Due Process Clause of the Fourteenth Amendment provides, in pertinent part "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV. "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218,

1221 (10th Cir. 2006) (citation omitted).  Mr. Williams argues that CDOC's Administrative Regulations create a constitutionally protected liberty interest.  (*See, e.g.*, Response (Doc. # 24) at p. 5 of 7; audio recording of Mr. Williams' arguments at the hearing held on January 21, 2011).  Prior to 1995, the existence and scope of an inmate's liberty interest, and therefore whether there was a due process violation, was determined by the language of the applicable regulations.  However, in *Sandin v. Conner*, the United States Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.  An inmate contending that the conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an "atypical and significant hardship" when compared to the ordinary incidents of prison life.  *Wilkinson*, 545 U.S. at 223.  *See also Steffey*, 461 F.3d at 1221 ("[T]he Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists. These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate. . . ." *DiMarco*, 473 F.3d at 1342. "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management

12

from the federal courts." *Id.*

Here, all of the relevant factors weigh against an enforceable liberty interest as a prerequisite to Mr. Williams' due process claim. As to the first enumerated factor, Mr. Williams does not deny sexual conduct; rather he argues that the punishment was not appropriate for the conduct. (*See, e.g.,* Response (Doc. # 24) at p. 3 of 7 ("My complaint is more about the abuse of authority and civil rights violations used in punishing me for the rule infraction than the actual rule itself."); at p. 4 of 7 ("[t]he complaint challenges the manner in which the defendant[s] punish violations of COPD rule II 6.5;" "To date there has been no plausible explanation as to how a discre[te] consen[s]ual sexual act poses a threat to SCF or anyone in SCF. I assert that such an act does not threaten the security of the facility.")). According to Mr. Williams' own allegations, the assignment to administrative segregation was punishment for sexual conduct, and therefore related to legitimate penological interests. (*See* CDOC AR 100-40 III.J. ("There are no authorized sexual acts in a penal institution.")). *See Penrod*, 94 F.3d at 1407 (administrative segregation due to legitimate concerns about prison security did not impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life).

Second, Mr. Williams makes no specific allegations of any "atypical and significant hardship." Other than general conclusory allegations of lost property and privileges and "a pervasive and hostile attitude toward me by SCF staff" (*see* Doc. # 3 at p. 9 of 15), Mr. Williams has not alleged conditions that were sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest. The conditions in administrative segregation have previously been determined not to give rise to a protected liberty interest. *See, e.g., DiMarco*, 473 F.3d at 1343 (deprivations resulting from confinement in administrative segregation did not impose such an atypical and significant hardship as to meet the *Sandin* standard); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (placement in administrative segregation did not give rise to a liberty interest). To

the extent that Mr. Williams bases his due process claim on the loss of earned time credits, he does not have a protected liberty interest in earned time credits. "[B]ecause the Colorado statutes grant discretion to prison officials to determine whether a prisoner shall qualify for earned time credits based on behavior, those statutes do not create a protected liberty interest." *Jenner v. McDaniel*, 123 Fed. Appx. 900, 905 (10th Cir. 2005). *See also Lusero v. Welt*, 223 Fed. Appx. 780, 784 (10th Cir. 2007) (loss of opportunity to earn good-time credit during his period of administrative segregation "does not deprive a prisoner of a constitutional right.") (citations omitted).

As to the third factor, while Mr. Williams alleges that his placement was "indefinite," he also alleges that "[a]fter four months in AD SEG I was sc[h]eduled for the Warden's Review and released back into the general population." (*See* Doc. # 3 at p. 5 of 15). Mr. Williams' allegation that he was "placed in AD SEG for an indeterminate period of time" is not plausible in light of his own allegation that he was released to the general population after four months. Further, Mr. Williams' allegation that he was confined in administrative segregation for the relatively brief period of 4 months does not constitute atypical and significant restraint deserving due process protections. *See e.g.,Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (no protected liberty interest where inmate held in disciplinary detention for 15 days and in administrative segregation for 120 days); *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (101 days in administrative segregation in Special Housing Unit, where inmate confined to cell for 23 hours a day with one hour out for recreation, limited to three showers a week and forbidden various privileges, did not amount to atypical and significant hardship warranting due process protections under Sandin); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (placement in administrative segregation for a total of eight months, without more, also does not constitute an atypical and significant hardship). Finally, as to the fourth enumerated factor, Mr. Williams has not alleged that his temporary placement in administrative segregation in any way increased

the length of his sentence.

Mr. Williams also alleges violation of his right to due process based on the deprivation of unspecified personal property. The Tenth Circuit Court of Appeals "has ruled that property interest claims by prisoners are also to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)) (other citations omitted). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin*, 515 U.S. at 486). Mr. Williams has not described the property allegedly withheld. His allegations of deprivation of personal property do not present an atypical, significant hardship, as a matter of law. *See Cosco*, 195 F.3d at 1224 ("regulation of type and quantity of individual possession" in prison cells reflects a typical type of restraint imposed on the prison population).

Even if Mr. Williams had a protected interest in the property he alleges Defendants withheld, he must also show that he was deprived of that interest without due process. *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("this inquiry examines the procedural safeguards built into the statutory or administrative procedure for effecting the deprivation and any remedies for erroneous deprivations . . . .") (internal quotation marks and citation omitted). "The intentional deprivation of property is not a fourteenth amendment violation if adequate state post-deprivation remedies are available." *Durre v. Dempsey*, 869 F.2d 543, 546 (10th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). *See also Zinermon v. Burch*, 494 U.S. 113, 131 (1990) (adequacy of post-deprivation remedies to redress random and unauthorized due process violations not limited to deprivations of protected property rights, but may also apply to deprivations of

liberty interest). Colorado provides that a prisoner may sue a prison official for intentional deprivations of property. *See, e.g.,* Colo. Rev. Stat. § 24-10-105 (authorizing tort actions against public employees if their actions were "willful and wanton"). Further, the Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process. *See Hudson*, 468 U.S. at 536 n. 15. (property interest); *Zinermon*, 494 U.S. at 132 (liberty interest). Mr. Williams has not alleged that he was denied an adequate postdeprivation remedy. For this reason also, he has not stated a claim for deprivation of property without due process.

In sum, Mr. Williams' allegations do not give rise to a protected liberty or property interest to support a claim for violation of due process.


B.    Qualified Immunity

To the extent that Mr. Williams is suing Defendants in their individual capacities, Defendants raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court has concluded in this Recommendation that Mr. Williams has failed to state any claim for violation of a constitutional right, Defendants in their individual capacities

are entitled to qualified immunity. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

C.      Lack of Personal Jurisdiction over Defendant Watts

Mr. Williams is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* August 25, 2010 "Order Directing Clerk to Commence Civil Action and Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. §1915" (doc. # 2)). After the September 20, 2010 "Order Granting Service by United States Marshal" (doc. # 8), a "Waiver of Service of Summons" was filed with the court on September 22, 2010, indicating that Defendant John Watts "no longer works for DOC" and providing a forwarding address for him in the state of Colorado. (*See* doc. # 10). The U.S. Marshal attempted to serve Mr. Watts at the forwarding address. On October 8, 2010, a unexecuted return of service was filed with the court, indicating that "Mr. Watts moved to Oklahoma in late 2008." (*See* doc. # 13). Based upon the information before the court, Defendant Watts cannot be served at the addresses on record with the court. To date, Defendant Watts has not filed with the Clerk of the Court a signed waiver of service or appeared in the case.

A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc., v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are

properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case.").

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). Defendant Watts was named as a Defendant in the Complaint filed on August 25, 2010. More than one hundred and fifty days has passed since the filing of this civil action and the record before the court indicates that Defendant Watts has not been served with a summons and complaint in this action.

While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, there is no indication in this case that the U.S. Marshal or the court clerk have failed to perform their duties to serve Defendant Watts. The court need not require the U.S. Marshal or the clerk of the court to search for or further attempt to serve Defendant Watts. Sufficient time has been afforded and sufficient efforts have been made to serve Defendant Watts that this Defendant may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

Accordingly, IT IS RECOMMENDED that Defendants' "Motion to Dismiss" (filed November 22, 2010) (Doc. # 19) be GRANTED and that this civil action be dismissed in its entirety.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve

and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 8th day of February, 2011.

BY THE COURT:

    s/Craig B. Shaffer
United States Magistrate Judge